on behalf of the Appellant Lopez-Torres, who is appealing three specific issues that I wanted to go over today. I'll try to speak fast because I want to touch on all of them. First, the Court had asked the parties to be prepared to argue the effect of the April 30th amendments to Section 3E1.1 of the Guidelines on Acceptance of Responsibility relating to the third point of acceptance of responsibility, an issue which I raised in both of my briefs. Basically, the trial defense lawyer objected and raised that objection both in her sentencing memorandum and again at sentencing. Scalia, you preserved it. Here's the question. You preserved it. You lose under current Ninth Circuit law, I think. And I think your brief candidly says, you know, we think the Ninth Circuit law is wrong. The sentencing guidelines would appear to change the situation, but they don't go into effect until November 1st. What should we do on that issue? Congress may turn them down, it may not turn them down. The likelihood is that they won't. You don't have to pause and think like that. Your answer is obviously wait until November 1st before you issue your decision. Or if we don't wait and rule against you, then what you would tell us is you'll file a petition for rehearing, and at that point the law will be what it is on November 1st. And if you don't win that way, you try to get it on bank. And if you lose on that, you file a petition with the Supreme Court, and by that time the law is in your favor. Now, where that leaves you a year from now, who knows, but that's what you would do is what. So is your answer what he said? Exactly, except my mind didn't work as quickly as his did. See, it creates a problem for us, because if we were ruling today, the law would require that we rule against you. But by the time this sausage machine grinds out its sausage, or even if we were to do it very promptly, you would have, I think, a likelihood of coming back to us and saying the law has changed. Now, I'm assuming that I'm right in my assessment of the law, and the government can respond to that. But that's the dilemma this case poses for me, and the easy answer is to be lazy on our part. Since I'm very slow in making decisions, I don't have as much of a dilemma. My friend here does. He's very quick. I'm very slow. I commend the slow approach, because I tend to be slow, but I do understand the need to be efficient. But I think in the long run, efficiency is promoted, and we don't spend a lot of resources on coming back and forth. Assuming you eventually prevail on that issue, which I think you would after November 1st, assuming inaction by Congress. Do your other issues go away? No. Don't you go back for resentencing at that point, and you can go back to the trial judge and say, I got this chart, I've now tweaked it, it's actually accurate. Well, I'd judge, give me a better explanation of the within guidelines sentence that you got. Don't go, I don't understand why we should reach those issues if we wait. If I may, I think, again, the argument would be towards efficiency. Since the Court will not be — would not be remanding now, but probably waiting to make sure that the guidelines do, in fact, go in effect, then it would be a waste of time and judicial resources, I think, to come back up and to argue the same issues without some guidance to the Court. Do they recur? I mean, what you've said is the district judge didn't give a sufficient explanation of the sentence that he imposed. A different sentence might get imposed if you're — if you prevail on this issue, and the judge will explain once again. You've said, you know, there's a chart here, and I'd like to make an argument, but that's — now you've said, well, the chart wasn't exactly accurate, and so I fixed it a little bit. Why don't you go — I think it was a visiting judge in this case, if I'm not mistaken, but whoever it was. No, it wasn't a visiting judge. But go back to the judge and make your pitch. Certainly, the explanation of the sentence is something that can be easily fixed if it was wrong. I think that it would be helpful for the Court to make — this is such a rare instance. It's usually defendants — usually defendants make an argument that on unwarranted similarities or disilluminarities that, you know, listen, the judge — the judge, you know, sentenced way off base in terms of how other defendants are sentenced in this district. That's a dangerous — that leads this Court to dangerous ends because it's sort of a never-ending wheel. This case, the district court specifically based her sentence on the ratio, which she perceived was 2 to 1, which was wrong. And I might add that the court's noting — But did you have this chart to submit to her? No, I didn't, because I didn't anticipate — Well, but if we send you back to her, because Judge Reinhart and I are slow and Judge Noonan, although he's normally fast, will be persuaded to be slow, then can't you show her the chart? I certainly can show her the chart, but I think that one fact which may ultimately need to be decided by the Court is whether, in fact, whether it's proper for a district court to base its decision on non-defendant, you know, on non-defendant-specific circumstances. If I can summarize your position is you not only want to win, you want to win on everything. Well, I think we've got an 82-month sentence here. And you're going to have a long sentence in this case, whatever happens, right? Correct. But in this case, you know, the defendant had a relatively minor enhancement for an enhancement that the judge at the time realized was minor because it involved him coming across the border. And it's all contained in the PSR. Coming across the border, they said, if you drive, we'll waive your fees. He wasn't involved in the whole conspiracy and so forth. So as a result, the Court imposed a 28-month sentence. And he had never had any other types of enhancing sentences, had only previously served two – actually, he received a 6-month sentence, I'm sorry, a 6-month sentence. So we go from a sentence which was so relatively non-serious that occurred 118 months ago, which is just two months shy of the 10-year guideline cutoff for reducing the enhancement from 12 to 8 levels. But you made all those arguments to the district judge. Those arguments were not all made. Well, if they weren't made, then I've got a problem, because if you – certainly those facts existed back then, the 10-month, the age of the old conviction. The judge, as I read the sentencing report, the sentencing hearing, goes through all that stuff and says, I'm still going to use it. You know, I must say, I'm not – if you didn't have the sentencing guidelines changed here, I would be unsympathetic to the range of your arguments. And so maybe you'd be better off if we didn't reach them. But I leave that to you. And I would leave that to the undivided or perhaps divided wisdom of the three of you. But I would like to reserve a few minutes for rebuttal. Thank you. MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL Good morning, Your Honors. Erica McCallum, appearing on behalf of the United States. I'm from Tucson in the District of Arizona. Regarding the third point issue, I would only point out to the Court that the defendant was sentenced to 70 months, which was below the guideline range. Were the third point to be applied, the sentencing range would be 70 to 87 months. But the judge – the issue here is the judge believed correctly, I think, under Ninth Circuit law, that given the government's withholding, you couldn't impose it, and the sentencing guidelines seemed to change the playing field. You agree with that? MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL I think that as of November 1st of this year, if Congress doesn't veto that change, it is going to change the playing field. SCALIA So I'll ask you a practical question. It's August the 16th. Let's assume it takes us 30 days to do something. It might take us longer. It might take us shorter. But that's a pretty prompt disposition of a case. Then a petition for rehearing at bank is filed, and we order a response. And sooner or later, we get to November 1, and the guidelines have changed. We have to grant it, don't we? MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL Candidly, I think you do. But – SCALIA So why don't we just wait? MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL And if on November 1, the guidelines haven't changed, we move on to issues 2 and 3 and dispose of them.  MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL I don't disagree with that plan. I would only request that this Court consider, if you're going to remand on the third point issue, that you remand on a closed record, as opposed to an open record, so that we're not relitigating all of the things the defendant has raised in the pending appeal. I would ask you to decide on those issues, the sentencing issues. Kennedy, I think the government wants us to remand on an open record. What's the stand? I just had a curiosity. When do we do it on an open record and when do we do it on a closed record? This is the first time I've ever heard the government say we want it on a closed record. Usually, they want to bring in a lot of other terrible things. MS. MCCALLUM, U.S. DISTRICT ATTORNEY GENERAL Honestly, I don't know what the rule is as to what a panel can – when they can say to a panel. Kennedy, I think we can do either one. But I just think, what – well, it doesn't matter. I'm just curious, it's going to be. And you want a closed record so you don't have to litigate this chart? Correct. And actually, I would ask you to decide on the judicial notice motion and say a chart like this is not judicially noticeable. Well, there's two separate issues here. One is the issue of whether this panel should take judicial notice of the chart. The second issue is whether or not on remand, if the record were open, it would be open for the defendant to come in and say, Your Honor, before you impose sentence, I want to show you how other people similarly situated have been sentenced to try to encourage you to give me a lower sentence. That's not really taking – that's not – that's a separate issue than an appellate panel taking judicial notice. And you don't want the district court to be able to do that either, right? I think it's a lot more efficient to decide it while we're here. However, whether the panel remands on an open or a closed record, the government is going to be able to respond, and I don't think this judge is going to do much to change her sentencing decisions, because I think her analysis was not based on some purely mathematical formula. Can I ask you one thing about her analysis, and I think it becomes moot if we vacate the sentence in remand. But Judge Jorgensen said something like, well, the usual practice is to give two times the old sentence. But I don't think that will work here, because this guy is a repeat criminal, and this is his, what, third – I think third walk through the federal criminal system, so I don't disagree with her. But could she – is that right? Is it an appropriate practice to say, I usually give twice the last sentence, but – so that's where I'm starting, but I'm going to give more? I – first of all, to start out, I believe it was Judge Zips who – I'm sorry. It was Judge Zips, just to be clear. I forget we have more than one woman judge in Tucson. But I don't think it's inappropriate for a judge to say, it's my practice with defendants of this type to do a certain type of thing, but looking at the 3553a factors, looking at this particular defendant's lack of being deterred, I am going to impose this sentence. There was a – I believe it was an unpublished decision that came out of this court last week where a district court judge had a spreadsheet that he was using when he was sentencing defendants, and this court said, there's nothing wrong with having a sort of a history of what you have done with certain types of defendants as a basis for this. This was slightly different, though. The transcript seems to suggest the judge said, there's a practice in this district to give you twice the previous sentence. So I'm starting from there, and then I'm adjusting up or down. Is that okay? I think it's okay as part of the calculus. I think as long as the judge starts with the guidelines, which this judge did here, and then says, okay, now, what is fair and what is sort of in line with what we do in our district, generally, we double it the second time we see you, but you are different, and here is why. And she did go through, there's a list, you weren't deterred by having a prior sentence that was five times higher. Scalia, she had a whole series of reasons which fall within 3553 guidelines. So my question was, it's a little unusual for a judge to say, it's nowhere written down, but we have this custom here, and our custom is to do X. And so I start with the custom, and then I make adjustments off the custom, as opposed to saying I start with the guidelines and make adjustments off the guidelines. Well, this judge did start with the guideline calculation, and if you look at the at her, her explanation in context, the prosecutor, the AUSA, actually raised the whole, we should double the sentence issue, because he said the prior offense, your total sentence was 41 months. Let's double it and give you 82 months. So I think the judge was, in part, responding to the prosecutor. In the end, she gave a below-guideline sentence. Yes, she did. If there are no further questions, I'll submit on my filings and ask you to affirm. Thank you. Roberts, I'd just like to address a couple of those issues. With respect to open or closed record, I think that the Court, Judge Hurwitz, is correct in that I think there are two separate issues with respect to judicial notice and then sending it back down, and then the Court can decide on her own whether or not she believes that this is something appropriate to look at or not. This was not something that could have been prepared for her at sentencing, because it was prepared in response to her finding that there was a district-wide practice that she set at sentencing of two to one. Now, in fairness to Judge Zips, she had recently been appointed as a district court judge. She had been a magistrate on the Court for some time, but not a sentencing judge. So that's a defense, and I think it is fair, especially under those circumstances, for her to take a look at what the actual district practice, what the figures show. The second thing that I wanted to raise was the fact that I know there was something else, was with respect to the district court, with respect to your point, Judge, about whether it was correct to start with a guideline, with a ratio and then say, usually in this district, district-wide, it's 2, but I'm going to give you 2-1-1-1. Specifically, what she said was, it's 2, but I'm going to give you 2-1-1-1-1 because you came back and you violated. But that specific range of person is the type of person who falls within the 2-to-1 ratio. In other words, all people that are coming back for reentry and are being revoked fall into that category. So I didn't quite understand the rationale for giving 2-1-1-1 as opposed to 2 when the group that she was relating to that got a 2-to-1 ratio, at least she believed and I think the figures show that it's 1.4, they all got he should have been sentenced on the same. But nonetheless, I think that's an issue that probably should be dealt with by the court. I sort of rescind my previous comments after thinking about it and hearing the government's comments about, I think it would be proper for the court to go ahead, remand, assuming that the guidelines get changed, and then certainly I think at that point it's up to the district court. We're not – I would be at this point, I guess, withdrawing my motion for judicial notice because the court's not looking to that issue at this point. So I would simply believe that it would be up to the district court at that point. And I believe she would look at those other statistics because her experience was only informed by being on the bench for possibly 3 or 4 months. I don't remember exactly. Kennedy, I thought the magistrates did all the work anyway. What's that? I said I thought the magistrates did all the work anyway. I would – you're not going to get me into that battle. Unless the court has any other questions, that's what I wanted to say. There was one other issue that I briefly did want to touch on, which I think probably the court may decide it doesn't want to go there, but the issue of the – I think the issue of the probation revocation is not a frivolous one. It's one where basically none of the procedures for the supervised release revocation were followed. There was – there was – the defendant basically was never told about, you know, what the violation was or that he had a right to disclosure, that he had a right to even contest the hearing, what the – that he had a right to cross-examine. Basically, in one sentence, in a compound factual basis, when the judge was telling the – was asking the judge – was asking the defendant about the factual basis for the reentry, he said, you know, on such-and-such a date, did you come across and had you, in fact, been deported, blah, blah, blah, in violation of your supervised release. There was never a separate – never any – it was all merged together. There was never, as is always the process in our district, a separate recitation of the different rights that he has. Roberts, I don't want to continue this too long, but I normally, these hearings should follow a sort of script, but your – one of the conditions of your guy's supervised release was that he not reenter the country, wasn't it? Certainly was. And he was there at the hearing saying, I reentered the country twice, and there was pretty good evidence that he – I mean, what difference would it have made? Well, the problem – Would he have said, no, I didn't reenter the country? He's standing there in the country. I think the problem is really one that's structural, because there's – Well, see, I agree in another case it might cause a real – it might cause a real issue if somebody wasn't informed and didn't have the ability to defend. But when the condition of supervised release is that you not reenter the country and the defendant is there at the hearing inside the country, I'm not sure what you get. But that's – I leave that where it is. I'm just not so sure that you would have to show prejudice, because I think when what happened in the – with the magistrate and the district court was that they had none of the hearings where none of the procedures were followed, and most importantly at the revocation hearing, nothing was done, that the – I mean, there's a reason for the process of everything that's required under due process, which is admittedly less than a plea colloquy, but there's a reason for that process. And to allow the magistrate and the district court to just not go through that process I think is very dangerous, and it's not – it's not susceptible to a harmless error or plain error. One more time. Let me do this again. Your client is charged with illegal entry. He has a trial set up for illegal entry, and he pleads guilty. I understand that the revocation of supervised release occurred before that, but doesn't the eventual ability to have a trial on the very issue that would have been a violation of supervised release cure any problem? Probably, but I think under a structural error analysis, that the issue of whether there was prejudice doesn't matter. But the issue that I see is really in terms of correcting the court process, and I think it's important for the Ninth Circuit. I think in the long run, in the long run for this defendant, that you're correct, that it would stand up, but I think it's important for this Court to take a position saying, you know, we have these rules for revocation proceedings, and we need to follow them. Thank you, Your Honor. I thank you. The case just argued will be submitted.
judges: Reinhardt, Noonan, Hurwitz